**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| LLOYD T. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV528 |
| | ) | |
| STEPHANIE BRATHWAITE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant Edward Dean Lance M.D.'s ['Defendant Lance'] Motion to Dismiss Plaintiff's Complaint" (the "Lance Motion") (Docket Entry 20; <u>see also</u> Docket Entry 34 (addressing individual capacity claims)), "Motion of Defendant Stephanie Brathwaite ['Defendant Brathwaite'] for Judgment on the Pleadings" (the "Brathwaite Motion") (Docket Entry 24; <u>see also</u> Docket Entry 37 (addressing individual capacity claims)), Plaintiff's "Motion for Summary Judgment on the Pleadings" (Docket Entry 41), Plaintiff's "Motion to Continue this Case" (Docket Entry 43), Plaintiff's "Motion for Summary Judgment on the Pleadings in Opposition to Defendant Brathwaite's Summ[ary] Judgment on the Pleadings as to Plaintiff's Individual Capacity Claims" (Docket Entry 45), and Plaintiff's "Motion to Continue this Case in Opposition to Defendant Lance's Motion to Dismiss Plaintiff's Individual Capacity Claims" (Docket Entry 47). For the

reasons that follow, the Court should grant the Brathwaite Motion and should grant in part and should deny in part the Lance Motion, in that the Court should dismiss any official capacity claims against Defendant Lance but should conclude that Plaintiff's Complaint (Docket Entry 2) states a claim against Defendant Lance under 42 U.S.C. § 1983 for deliberate indifference in his individual capacity. Further, the Court should deny Plaintiff's summary judgment motions (Docket Entries 41, 45). Lastly, the Court should construe Plaintiff's motions to continue (Docket Entries 43, 47) as responses in opposition to the Lance Motion.

## Introduction

Plaintiff (a prisoner of the State of North Carolina) commenced this action under 42 U.S.C. § 1983, against Defendant Brathwaite and Defendant Lance, "health care provider[s]" at "Albe[]marle Correctional Institut[ion]" (Docket Entry 2 at 3), alleging that they deprived him of his "8th Amendment rights of cruel and unusual punishment" (id. at 5).[1] According to the Complaint:

"[Plaintiff's] health has been put in jeopardy by both [Defendants] by th[ei]r fail[ure] to give [Plaintiff] ad[e]quate medical equipment and care [by] not allowing [him] to see a[n] outside doctor that [he] need[ed] to address [his] ongoing medical

_____

    1 Citations to Docket Entry pages utilize the CM/ECF footer's pagination.

2

needs." (Id. at 7 (parentheses omitted).) Also, the Complaint alleges that "both [Defendants] have failed to address [Plaintiff's] on[]going serious medical needs that [he has] had now for over 2 ½ years." (Id. at 10.)

Regarding his injuries, the Complaint alleges that Plaintiff "came to this facility on 3-2-17 . . . sick as a dog[ a]nd [his] serious medical condition has only gotten worse[] . . . . [Plaintiff has] been diagnosed with [] osteoarthritis in [his] knees[, but Plaintiff] still do[es not know] what is wrong with [his] bones." (Id. at 12.) Further, the Complaint states that Plaintiff's pain "finally got so bad that [he] couldn't walk period. [ He] got to see Dr. Faulcon on 1-4-18, and he gave [Plaintiff] a wheelchair for six months[] because [Plaintiff] couldn't walk. [Plaintiff] also finally got a bottom bunk[ and] bottom floor med[ication] pass." (Id.)

In his original Complaint, Plaintiff sought "$3 million dollars" from Defendants in their official capacities "[f]or causing [him] dilberating [sic] pain and suffering, and for ignoring [his] [ongoing] serious medical needs in violation of [his] 8ᵗʰ Amendment rights to be free from cruel and unusual punishment[]." (Id. at 14.) Plaintiff later moved the Court to amend his Complaint to include claims against Defendants in their individual capacities. (See Docket Entry 33 at 1-2.) The undersigned granted Plaintiff's motion to amend. (See Text Order

dated Oct. 22, 2019 ("deeming Section I and Section VI of [the] Complaint as amended to assert claims and to seek relief against Defendants in their individual capacity, as well as their official capacity").)

Along with his Complaint, Plaintiff submitted a form entitled "Patient Medication Information" for the medication "Levothyroxine" (see Docket Entry 2 at 8), on which he both underlined and highlighted a cautionary message indicating that "[t]his drug may cause weak bones (osteoporosis) with long term use" (id. (emphasis omitted)). Plaintiff also underlined the medication's "possible side effects," including "[f]eeling nervous and excitable[, s]hakiness[, n]ot able to sleep . . . . [, l]eg cramps[, and m]uscle weakness" (id. (emphasis omitted)). Additionally, Plaintiff attached a "Memorandum," dated "April 6, 2017," from "S. Litaker Lead RN," addressed to Plaintiff, "[i]n response to [Plaintiff's] concerns" (id. at 13), which noted:

> [Plaintiff] transferred to Albemarle Correctional on 3-2-17. He had no restrictions for bottom bunk, extra mattress, bed boards, extra pillows, or lower levels.
>
> He was able to ride the bus. Ambulated on and off the bus without difficulty or assistance.
>
> [Plaintiff] was seen on 3-7-17 by the provider and the following was noted.
>
> [Plaintiff] was able to stand unassisted and walk unassisted.
>
> The practitioner explained the guidelines for all the restrictions [Plaintiff] is asking for. There are no diagnosis [sic] for this patient that qualifies him for

4

a bottom bunk, extra mattress, bed board, lower level, or extra pillows.

. . . .

There is a diagnosis of chronic pain. The [North Carolina Department of Public Safety (the "NCDPS")] states that pain is an unfortunate but unavoidable part of the human experience.

Pain in not considered a chronic disease in the NCDPS.

[Plaintiff] is currently treated for his pain per providers orders.

When he was last seen on 3-27-17 by nursing, [Plaintiff] refused protocol treatment of pain medications.

If [Plaintiff] continues to need assistance, please place a nurse sick call for assessment.

(Id.) Lastly, Plaintiff included information regarding numerous grievance forms submitted throughout his referenced incarceration period (see id. at 15-24), and provided the actual correspondence and forms for the Court's review (see id. at 31-102).

Defendant Brathwaite "move[d] the Court pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for the entry of judgment on the pleadings in her favor and the dismissal of all claims asserted against her in this action," on the grounds that "the pleadings establish on their face that Plaintiff has failed to state any valid claims against her," and that his claims remain "barred by sovereign and qualified immunity." (Docket Entry 24 at 1; see also Docket Entry 26 (Corrected Brief); Docket Entry 37

(addressing individual capacity claims); Docket Entry 38 (Brief).)[2]
Plaintiff then moved for "Summary Judgment on the Pleadings"
(Docket Entry 41; see also Docket Entry 42 (Brief); Docket Entry 45
(addressing individual capacity claims); Docket Entry 46 (Brief))
and Defendant Brathwaite responded (Docket Entries 50, 51).

In addition, "pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure, [Defendant Lance has] move[d] the Court to
dismiss Plaintiff's allegations pertaining to him . . . ." (Docket
Entry 20 at 1; see also Docket Entry 21 (Brief); Docket Entry 34
(addressing individual capacity claims); Docket Entry 35 (Brief).)
Plaintiff then filed a "Motion to Continue this Case" (Docket Entry
43; see also Docket Entry 44 (Brief)) and "Motion to Continue this
Case in Opposition to Defendant Lance's Motion to Dismiss
Plaintiff's Individual Capacity Claims" (Docket Entry 47; see also
Docket Entry 48 (Brief)). Defendant Lance responded to Plaintiff's
motions. (Docket Entry 49.)[3]

---

2 Out of an abundance of caution, both Defendants argue that,
"[t]o the extent [the Complaint] attempts to assert [a claim of
medical malpractice, it] fails to state a claim." (Docket Entry 26
at 12-14; accord Docket Entry 49 at 7-8.) However, the Complaint
does not allege a medical malpractice claim (see generally Docket
Entry 2); moreover, in his summary judgment brief, Plaintiff
specifically stated that "[t]his is not a medical malpractice claim
[and n]o attempt has been made to assert such a claim." (Docket
Entry 42 at 14.)

3 Defendant Lance's response states that he "underst[ood] the
documents Plaintiff filed to be a Response in Opposition to his
Motion to Dismiss rather than a Motion for Continuance despite the
fact that Plaintiff captioned the documents as [such]." (Docket
Entry 49 at 1 n.1.) Consistent with Defendant Lance's

A. Defendant Brathwaite

Relevant to Defendant Brathwaite's motions, the Complaint states:

"[Plaintiff] saw [Defendant] Brathwaite on numerous occas[]ions about [his] medical care." (Docket Entry 2 at 7.) Plaintiff first "saw her on 2-7-17 . . . about [his] need[ for] a wheelchair, bed board, a bottom bunk on the bottom floor, [and] an extra mattress. [He] couldn't get these items, because [he] wasn't sick enough according to [Defendant] Brathwaite." (Id.)[4] Plaintiff then "saw [Defendant Brathwaite] again on 5-23-17 . . . about [his] levothyroxine (thyroid medication)," and on "11-27-17 . . . about [his] continued pain and needing a bottom bunk on the bottom floor [ b]ut was refused again, because [he was] not sick enough according to [Defendant] Brathwaite." (Id.) Plaintiff "saw

_____

understanding of Plaintiff's motions, Plaintiff's filings do not move for a continuance, but rather "move[] the Court not to dismiss his claim against Defendant [Lance]" (Docket Entry 43 at 1; accord Docket Entry 47 at 1 (addressing individual capacity claims)), and further "request[] that the Court uphold his claim, and for this case to be bound over for trial" (Docket Entry 43 at 3; accord 47 at 4 (addressing individual capacity claims)). As such, the Court should construe Plaintiff's motions (Docket Entries 43, 47) as responses in opposition to the Lance Motion rather than motions to continue this case.

    4   The Complaint and Plaintiff's summary judgment motion (along with other supporting documents) state that Plaintiff arrived at Albemarle Correctional Institution on March 2, 2017. (See Docket Entry 2 at 12; see also id. at 13; Docket Entry 42 at 5.) Plaintiff thus likely intended to allege that he first saw Defendant Brathwaite on March (not February) 7, 2017, as his own attachment indicates (see Docket Entry 2 at 13).

7

[Defendant Brathwaite] again on 12-4-17 . . . about [his] x-rays and not taking [his] thyroid med[ication] like [he is] suppos[ed] to." (Id.) Finally, Plaintiff has deduced that, "[a]s long as [he] can walk, that is all that [Defendant Brathwaite] cares about. According to [Defendant] Brathwaite[,] pain is an unavoidable part of getting old." (Id. at 9.)

### B. Defendant Lance

As to Defendant Lance, the Complaint alleges:

[Plaintiff] saw [Defendant] Lance on numerous occasions about [his] medical care.

[Plaintiff] saw [Defendant] Lance on 10-16-18 . . . about [his] MRI. [Defendant Lance] stated that [there] was nothing wrong with [Plaintiff's] spine. [Plaintiff] also tried to get some orthopedic shoes from him as well, but [Defendant Lance] said [there] was nothing wrong with [Plaintiff's] feet to get the special shoes. But a week or so later[,] a nurse told [Plaintiff] that [he] had two minor fractures to [his] spine. [Also,] once [Plaintiff] got [his] medical records about the MRI, the technician said that [Plaintiff] had three minor fractures to [his] spine, and that one was worse than the other two.

[Plaintiff] saw [Defendant] Lance on [two] other occas[]ions since the 10-16-18 visit[ a]nd he still hasn't said anything about the fractures to [Plaintiff's] spine. So, [Plaintiff] can't get any help with [his] back and foot problems from [Defendant] Lance. . . .

. . . .

[ O]n 4-28-18[, Defendant] Lance took [Plaintiff] off [of his] pain med[ication] (Indomethacin), which is the only pain medi[ication] that has given [Plaintiff] any pain relie[f] in over 2 years.

8

(Id. at 9-10.)[5]  In opposing the Lance Motion, Plaintiff provided additional information, to include that (i) Defendant Lance "became [Plaintiff's] healthcare provider in mid August 2018" (Docket Entry 44 at 4), (ii) "turned [Plaintiff] down for an extra mattress" (id.), (iii) "order[ed] the MRI scan" (id. at 6),  and (iv) "update[d Plaintiff's] stroller for another year" (id.).[6]

## Discussion

### I. Motion Standards

In reviewing the Defendants' motions, the Court must "accept the facts alleged in [Plaintiff's C]omplaint as true and construe them in the light most favorable to [him]." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom.,

---

5  Plaintiff's response to the Lance Motion also asserts that the "MRI technician" told Plaintiff "that [he] had cervical spondyiosis [sic] as well."  (Docket Entry 44 at 5.)

6  That response also attempts to raise new claims against Defendant Lance, through allegations that Defendant Lance (i) "canceled [sic] [Plaintiff's] equipment and restrictions in April 2019 that [Plaintiff received] from Dr. Faulcon (extra pillow, extra blanket, bottom bunk, and no climbing restrictions)" (Docket Entry 44 at 6), (ii) "probably denied [Plaintiff] a second visit to the neurologist"  (id. at 8), and (iii) "w[o]n[']t discuss with [Plaintiff] about seeing a ch[i]ropractor, orthopedic doctor, or a bone spec[i]alist" (id.).  However, "[t]he record demonstrates that Plaintiff was aware that he could move to amend his Complaint to add new factual allegations and claims. . . . [T]he Court has not granted Plaintiff leave to amend his Complaint.  Notwithstanding his pro se status, Plaintiff [should] not be permitted to evade the Federal Rules of Civil Procedure and raise new claims and make new factual allegations except by way of amendment." Ridley v. Whitener, No. 5:08cv99, 2011 WL 3476472, at *1 n.3 (W.D.N.C. Aug. 9, 2011) (unpublished) (internal citations omitted) (emphasis in original).  Accordingly, the Court should not consider the additional allegations set forth in Plaintiff's response.

Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court also must "draw all reasonable inferences in favor of [P]laintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Finally, because of Plaintiff's pro se status, the Court must "liberally construe[]" his Complaint, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), although the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

## A. Rule 12(c) Standards

First, "a party may move for judgment on the pleadings" pursuant to Rule 12(c) [of the Federal Rules of Civil Procedure] any time "[a]fter the pleadings are closed," as long as it moves "early enough not to delay trial." Fed. R. Civ. P. 12(c). In evaluating a Rule 12(c) motion, the Court considers only the pleadings, accepting factual allegations in the answer "as true only where and to the extent they have not been denied or do not conflict with the [C]omplaint." Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (internal quotation marks omitted). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material

10

fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985). In other words, "a Rule 12(c) motion tests only the sufficiency of the [C]omplaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (internal quotation marks omitted).

### B. Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion, a Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## II. Official Capacity Claims

As an initial matter, Defendants' motions correctly contend that the Complaint fails to state an official capacity damages claim against them. (See Docket Entry 21 at 11-12; see also Docket Entry 26 at 11-12.) The Complaint identifies both Defendants as "health care providers" at a state prison, i.e., "Albe[]marle Correctional Institut[ion]." (Docket Entry 2 at 3.)

Any official capacity damages claim alleged against employees of a state prison fails because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), and "a State is not a person within the meaning of § 1983," id. at 64. See Harris v. Guice, No. 1:13CV268, 2015 WL 1401549, at *4 (M.D.N.C. Mar. 26, 2015) (unpublished) (finding that official capacity damages claims failed against defendant who was "alleged to be a correctional administrator at Albemarle Correctional Institute" and, as such, qualified as a "state employee[]"), recommendation adopted, 2015 WL 2089691 (M.D.N.C. May 4, 2015) (Beaty, Jr., J.). Accordingly, the Complaint's official capacity claims against Defendant Lance and Defendant Brathwaite (which demand only damages) fail as a matter of law.

## III. Individual Capacity Claims

### A. Deliberate Indifference Standards

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . medical care . . .[,] it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989). To make out a constitutional claim for

deprivation of medical care, Plaintiff must show that Defendants "acted with 'deliberate indifference' (subjective) to [Plaintiff's] 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008). A medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (internal quotation marks omitted).

"The subjective component . . . sets a particularly high bar to recovery." <u>Iko</u>, 535 F.3d at 241. Indeed, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990), <u>overruled in part on other grounds by</u>, <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1994). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a [Section] 1983 claim unless exceptional circumstances are alleged." <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985).

Coordinately, a defendant displays deliberate indifference if he or she knows that an inmate faces a risk of harm due to a serious medical need and that the defendant's "actions were insufficient to mitigate the risk of harm to the inmate arising

from [that] medical need[].” <u>Iko</u>, 535 F.3d at 241 (emphasis and internal quotation marks omitted); <u>see also</u> <u>Scinto v. Stansberry</u>, 841 F.3d 219, 225 (4th Cir. 2016) (“To prove deliberate indifference, plaintiffs must show that ‘the official knew of and disregarded an excessive risk to inmate health or safety.’” (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)) (internal brackets omitted)).

“[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.” <u>Farmer</u>, 511 U.S. at 835. “It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm.” <u>De’lonta v. Johnson</u>, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can meet that standard by showing “that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.” <u>Scinto</u>, 841 F.3d at 226 (internal quotation marks omitted). Moreover, “failure to respond to an inmate’s known medical needs raises an inference of deliberate indifference to those needs.” <u>Id.</u> (internal brackets and quotation marks omitted). Consistent with the foregoing statements from <u>De’lonta</u> and <u>Scinto</u>, the Fourth Circuit recently reversed a district court’s dismissal of a deliberate indifference claim where the plaintiff “alleged that his doctors acknowledged some symptoms

14

but ignored most, disregarded abnormal test results, and failed to treat any of his symptoms effectively," observing that such allegations, "if true, would establish that his doctors actually knew of and disregarded an objectively serious condition, medical need, or risk of harm." Jehovah v. Clarke, 798 F.3d 169, 181-82 (4th Cir. 2015) (internal brackets and quotation marks omitted)).

B. Defendant Brathwaite

Defendant Brathwaite's brief in support of her Motion contends that "the Complaint and its attachments rebut [a deliberate indifference] claim] and establish that Plaintiff's constitutional rights were not violated by her." (Docket Entry 26 at 8.) It further argues that, in any event, "[t]he pleadings in this case reveal on their face that Plaintiff's requests for accommodations and treatment were not ignored or disregarded by Defendant Brathwaite." (Id. at 8.) Accordingly, Defendant Brathwaite's brief asserts that "the pleadings reveal, at best, that Plaintiff disagrees with his providers regarding his diagnoses, treatment plan, medications, and accommodations." (Id. at 9-10 (emphasis omitted).) As such, Defendant Brathwaite would have the Court rule that "[t]he pleadings establish that Plaintiff's allegations, even if true, are insufficient as a matter of law to assert a valid deliberate indifference claim." (Id. at 10.)

In his brief regarding his improperly-styled summary judgment motion, Plaintiff confirmed that he received many of his requested

15

accommodations, to include medical equipment, pain medication, and a visit to a neurologist at Central Prison (<u>see</u> Docket Entry 42 at 6-8); however, he has maintained that "Defendant Brathwaite never once gave Plaintiff [] any of the requested equipment or restrictions or a visit to an outside doctor or any pain med[ication] that worked." (<u>Id.</u> at 8.)[7]

Here, Plaintiff has failed to establish a viable deliberate indifference claim against Defendant Brathwaite. To begin, regarding the first visit on March 7, 2017, the Complaint confirms that, upon Plaintiff's "transferr[al] to Albemarle Correctional [Institution] on 3-2-17[, h]e had no restrictions for bottom bunk, extra mattress, bed boards, extra pillows, or lower levels." (Docket Entry 2 at 13.) Further, after conducting an examination of Plaintiff on March 7, 2017, the provider noted that Plaintiff

_____

7   Plaintiff's brief also purports to assert an additional claim against Defendant Brathwaite. (<u>See</u> Docket Entry 42 at 3.) Specifically, it alleges that Plaintiff "saw [Defendant Brathwaite] again on 21 May 2017 . . . about needing orthopedic shoes, and she was still on [him] about not taking [his] thyroid med[ication] like [he was supposed] to[ a]nd she didn't order [Plaintiff] any shoes, because [he] did not have a job (taking classes)." (<u>Id.</u>) Ignoring Plaintiff's failure to present this claim in either his Complaint or his later amended pleading (<u>see generally</u> Docket Entries 2, 33), it would still ultimately fail, because Plaintiff has not identified a serious medical need requiring the use of orthopedic shoes, <u>see</u> <u>Abdullah v. Byrne</u>, Civ. Action No. 8:16cv3000, 2017 WL 9286976, at *6 (D.S.C. May 9, 2017) (unpublished) (rejecting deliberate indifference claim where the plaintiff did not show that his "desire to receive new [orthopedic] shoes . . . amount[ed] to [a] sufficiently serious medical need[] mandating treatment"), <u>recommendation adopted</u>, 2017 WL 2364306 (D.S.C. May 31, 2017) (unpublished).

"was able to stand unassisted and walk unassisted . . . . There [was] no diagnosis for [Plaintiff] that qualifie[d] him for a bottom bunk, extra mattress, bed board, lower level, or extra pillows." (Id.)[8] Plaintiff's lack of restrictions and/or qualifying diagnosis when he arrived at Albemarle Correctional Institution on March 2, 2017 (which the Complaint does not contest), corresponds with Defendant Brathwaite's assessment of Plaintiff a mere five days later. Nor do the pleadings otherwise provide a factual basis to find that Plaintiff suffered from a serious medical need and/or that Defendant Brathwaite acknowledged and disregarded any serious medical need at that point.

Next, the Complaint asserts that Plaintiff "saw [Defendant] Brathwaite" on "5-23-17" and "12-4-17" (Docket Entry 2 at 7),[9] and on both occasions, they discussed his failure to "tak[e his] thyroid med[ication] like [he was] suppos[ed] to[]" (id.).

_____

8  In Plaintiff's grievance form submitted "6-21-18," he stated that he "saw the provider on 3-7-17[] and she offered [him] a bed board then." (Docket Entry 2 at 81.) Plaintiff since has identified this "provider" as Defendant Brathwaite. (See Docket Entry 42 at 2-3; but see id. at 3 (asserting that he "told her [the bed board] wouldn't work without an extra mattress").)

9  Although the Complaint asserts that Plaintiff also "saw [Defendant Brathwaite ] on 12-4-17 . . . about [his] x-rays" (Docket Entry 2 at 7), it does not allege that she failed to provide any requested accommodation on either May 23, 2017, or December 4, 2017 (see id.). To the contrary, in Plaintiff's attached grievance form, he provided additional information regarding this visit, which indicated that "[Defendant] Brathwaite had x-rays done on [his] knees, and they came back negative." (Id. at 48-49 (parentheses omitted).)

17

Moreoever, Plaintiff has confirmed that he "was non-compliant with some of [his] medications during some of the time [at Albemarle Correctional Institution] when Defendant Brathwaite was [his] healthcare provider[, a]nd would not take the thyroid med[ication] as prescribed." (Docket Entry 42 at 5; see also id. (justifying failure to comply by arguing that, while taking thyroid medication over many years, he experienced "all of these[] symptoms at times").) As Defendant Brathwaite has explained, Plaintiff's failure to "take his thyroid medication as prescribed [] concerned his providers who believed that this could be the source of Plaintiff's pain." (Docket Entry 26 at 4.)

Lastly, the Complaint asserts that Plaintiff "saw [Defendant Brathwaite] again on 11-27-17 . . . about [his] continued pain and needing a bottom bunk on the bottom floor[, b]ut [he] was refused again, because [he was] not sick enough according to [Defendant] Brathwaite." (Docket Entry 2 at 7.) The Complaint lacks factual matter establishing that Plaintiff suffered from a serious medical need for a bottom bunk in a bottom floor cell. (See generally Docket Entry 2.) As a result, that claim thus fails as a matter of law. See Staggers v. Florence Cty. Sheriff's Office, No. 4:13cv57, 2014 WL 2434649, at *5 (D.S.C. May 9, 2014) (unpublished) (denying prisoner's deliberate indifference claim, in part, because the prisoner "present[ed] no evidence that he required a bottom tier cell, only that he preferred a bottom tier cell because it was

painful to climb the stairs"), recommendation adopted, 2014 WL 2434649, at *1 (D.S.C. May 28, 2014).

In any event, in an attached grievance form submitted by Plaintiff on "12-10-17," he stated that "the unit manager Mr. Thompson . . . got [him] a bottom bunk on the top floor in Sept[ember]." (Id. at 50 (parentheses omitted).) The grievance form further reports that "Mr. Thompson [] moved [Plaintiff] to the bottom floor [the week of December 10, 2017]." (Id.) Therefore, according to the Complaint, at the time of Plaintiff's late November 2017 visit with Defendant Brathwaite, Plaintiff already had received a bottom bunk accommodation and obtained a transfer to a bottom floor two weeks later. As such, the Complaint cannot sustain a deliberate indifference claim against Defendant Brathwaite on that front.

To further illustrate that point, Defendant Brathwaite has observed that "Plaintiff has received all of the accommodations he has requested from [her] at Albemarle Correctional Institution, aside from an extra mattress" (Docket Entry 26 at 8), as shown by reference to the Complaint:

1) "Plaintiff has received a wheelchair, a bottom bunk, and a bed board" (id. at 9 (citing Docket Entry 2 at 25, 50, 60, 81));

2) "[Plaintiff] is being followed by a chronic care nurse at Albemarle and [] he has been seen at least twenty times by medical providers at Albemarle" (id. (citing Docket Entry 2 at 22, 49));

19

3) "[Plaintiff] has also had x-rays, an MRI, and has been assessed by a neurologist" (id. (citing Docket Entry 2 at 49, 101)); and

4) "Plaintiff identifies various pain medications that have been prescribed for him at Albemarle [and he] also notes . . . that his providers at Albemarle have counseled him to take his thyroid medication as prescribed and that they believe his failure to take his thyroid medication is the cause of his pain" (id. (citing Docket Entry 2 at 21, 41-42, 47-49, 54, 70-71)).

Given this record, Plaintiff's critique of Defendant Brathwaite's evaluation and determinations regarding his requested accommodations amount, at most, to a mere disagreement between an inmate and medical provider concerning appropriate medical care, which does not support a constitutional claim. See Wright, 766 F.2d at 849. In other words, the Complaint does not establish that Defendant Brathwaite "acted with 'deliberate indifference' (subjective) to [Plaintiff's] 'serious medical needs' (objective)," Iko, 535 F.3d at 241; see also id. (explaining that, to establish deliberate indifference, an official must possess "*actual knowledge of the risk of harm* to the inmate" and "must *also* have recognized that *h[er] actions were insufficient* to mitigate the risk of harm to the inmate arising from his medical needs" (emphasis in original) (internal quotation marks omitted)).

Alternatively, "[q]ualified immunity from [Section] 1983 claims 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Put simply, qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of bad guesses in gray areas [and] [i]t encourages capable citizens to join the ranks of public servants by removing the threat of constant litigation." Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (internal citation and quotation marks omitted). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Pearson, 555 U.S. at 237 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "Determining whether qualified immunity applies involves a two-prong inquiry: 'whether the facts make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (quoting Pearson, 555 U.S. at 232 (internal ellipsis omitted)). For reasons discussed above, the Complaint shows no violation of clearly established constitutional rights regarding medical care by

21

Defendant Brathwaite and thus the qualified immunity doctrine also requires dismissal in this case.

### C. Defendant Lance

Turning to the Lance Motion, Defendant Lance has argued that "Plaintiff's Complaint fails to allege that [he] personally denied Plaintiff's constitutional rights" and, instead, "vaguely alleges that [he] failed to give [Plaintiff] medical equipment and care by not allowing him to see an outside physician to address his ongoing medical needs," without "identify[ing Plaintiff's] serious medical need." (Docket Entry 21 at 7.) Further, Defendant Lance has emphasized that the "Complaint actually delineates that [Plaintiff] received medical care in response to his complaints." (Id.) Although the Complaint does rely at points on vague allegations, it also states specific allegations regarding Defendant Lance's treatment of Plaintiff.

First, the Complaint alleges that Plaintiff "tried to get some orthopedic shoes from [Defendant Lance] . . ., but [Defendant Lance] said th[ere] was nothing wrong with [Plaintiff's] feet." (Docket Entry 2 at 9.) Moreover, the Complaint does not reflect that Plaintiff, at any point, received orthopedic shoes from Defendant Lance or any other medical provider. (See generally id.) Nevertheless, the Complaint offers only generalized assertions as to the basis for this requested medical accommodation, such as that Plaintiff needed "proper foot wear to help with [his] walking and

22

cramping" (id. at 10), and thus the Complaint fails because it does not establish a serious medical need for orthopedic shoes, see Abdullah v. Byrne, Civ. Action No. 8:16cv3000, 2017 WL 9286976, at *6 (D.S.C. May 9, 2017) (unpublished) (rejecting deliberate indifference claim where the plaintiff failed to assert that his "desire to receive new [orthopedic] shoes . . . amount[ed] to [a] sufficiently serious medical need[] mandating treatment"), recommendation adopted, 2017 WL 2364306 (D.S.C. May 31, 2017) (unpublished). To the contrary, the Complaint simply describes Plaintiff's disagreement with Dr. Lance's treatment, which does not "rise to the level of deliberate indifference necessary to violate the Eighth Amendment." Id., (citing Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975)).

Next, the Complaint alleges that "Defendant Lance took [Plaintiff] off [of his] pain med[ication] (Indomethacin), which is the only pain med[ication] that has given [Plaintiff] any pain relie[f] in over 2 years." (Docket Entry 2 at 10.) As to that allegation, Defendant Lance has argued that "Plaintiff has no constitutional right to that specific pain medication and [the Complaint] fails to allege that [Defendant] Lance discontinued all of Plaintiff's other medications and/or treatment for his pain." (Docket Entry 21 at 8.)

Consistent with Defendant Lance's contentions, numerous federal courts, including the Fourth Circuit, have determined that,

absent evidence of malicious purpose, the failure of prison medical personnel to provide specific pain medication of particular strength does not constitute deliberate indifference. See, e.g., Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977) (holding that "[the d]efendants' decision to provide [prisoner] plaintiff with one medication over another does not give rise to a constitutional violation"); Jacobs v. McVea, Civ. Action No. 14-552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014) (unpublished) ("While it is evident that [the] plaintiff was unhappy with the over-the-counter pain medication, a prisoner has no right to be prescribed a particular medication for pain, and the fact that he disagrees with the prison medical staff concerning which pain medication is appropriate is not actionable under [Section] 1983."); Feder v. Sposato, No. 11-CV-193, 2014 WL 1801137, at *9 (E.D.N.Y. May 7, 2014) (unpublished) ("[T]he failure to provide stronger pain medication does not constitute deliberate indifference.").

Beyond the foregoing, the Complaint's allegations against Defendant Lance relate to his alleged failure to either address and/or treat Plaintiff for spinal fractures. (See Docket Entry 2 at 9; see also id. at 99-102.) The brief in support of the Lance Motion contends that the Complaint "fails to satisfy the subjective element required to state a [Section] 1983 deliberate indifference claim by failing to allege [Defendant] Lance was aware of facts from which an inference could be drawn that a substantial risk of

24

serious harm existed and that [he] also drew that inference."
(Docket Entry 21 at 7 (emphasis omitted).) The brief further
argues that, in any event, "[t]aking Plaintiff's allegations as
true, [Defendant] Lance's alleged assessment that there was nothing
wrong with Plaintiff's back is, at most, negligence, which does not
constitute a [Section] 1983 deliberate indifference claim." (Id.)

The Court should reject those arguments, because (as
documented in the Introduction) the factual allegations in the
Complaint go farther than Defendant Lance has acknowledged and
(when viewed in the light most favorable to Plaintiff with the
benefit of all reasonable inferences) would permit a reasonable
fact-finder to conclude that Defendant Lance exhibited deliberate
indifference to Plaintiff's serious medical need, by failing to
treat an obvious spinal injury that required professional care.

Here (as detailed in the Introduction), the Complaint (when
viewed in the light most favorable to Plaintiff with the benefit of
all reasonable inferences) alleges that:

1) Plaintiff's back pain qualified as a serious medical need,
i.e., one "diagnosed by a physician as mandating treatment," Iko,
535 F.3d at 241 (internal quotation marks omitted);

2) as a result of Plaintiff's reports of back pain, Defendant
Lance "order[ed an] MRI scan" (Docket Entry 44 at 6), and
thereafter reviewed results that (according to a nurse and a
medical technician) revealed Plaintiff's obvious, treatment-

requiring spinal injury, such that a fact-finder could conclude that Defendant Lance must have "kn[own] of a substantial risk [to Plaintiff] from the very fact that the risk was obvious," Scinto, 841 F.3d at 226 (internal quotation marks omitted); and

3) Defendant Lance nonetheless "fail[ed] to respond to [Plaintiff's] known medical needs [thus] rais[ing] an inference of deliberate indifference to those needs," id. (internal brackets and quotation marks omitted).

In sum, the Complaint's allegations plausibly support a deliberate indifference claim, because they would permit a finding that Defendant Lance "ignored [Plaintiff's symptoms], disregarded abnormal test results, and failed to treat any of [his] symptoms," Jehovah, 798 F.3d at 181. The Court therefore should deny Defendant Lance's request for dismissal of Plaintiff's Section 1983 claim for deliberate indifference against Defendant Lance in his individual capacity as to Plaintiff's spinal injuries.

## IV. Plaintiff's Motions for "Summary Judgment on the Pleadings"

As detailed in the Introduction section, Plaintiff moved for "summary judgment on the pleadings in his favor" as to Defendant Brathwaite. (See generally Docket Entries 41, 45). However, "[a]s a general rule, [] summary judgment is not appropriate prior to the completion of discovery." Webster v. Rumsfeld, 156 F. App'x 571, 576 (4th Cir. 2005); see also Rudolph v. Buncombe Cty. Gov't, Civ. No. 1:10cv203, 2011 WL 1883814, at *1 (W.D.N.C. May 17, 2011)

(unpublished) (dismissing the pro se plaintiff's motion for summary judgment because of its filing before discovery deadline). In this matter, discovery has not yet commenced. Further, pursuant to this District's Local Civil Rules, "(*pro se* parties) shall be governed by a scheduling order entered by the Court after an initial pretrial conference unless the Court determines, in its discretion, that no conference is necessary; discovery shall not commence until entry of the scheduling order." M.D.N.C. LR 16.1(a) (italics in original). The Court has neither held an initial pretrial conference nor entered a scheduling order in this matter.

In any event, a review of Plaintiff's motions confirms that his overarching request refers to the "the dismissal of Defendant [] Brathwaite's Judgment on the Pleadings" (Docket Entry 41 at 1; see also Docket Entry 45 at 1 (addressing individual capacity claims)), and, that all claims in opposition to Defendant [] Brathwaite's motion in this action be up[]held" (Docket Entry 41 at 2; see also Docket Entry 45 at 2 (addressing individual capacity claims)). For reasons discussed above, Defendant Brathwaite has demonstrated entitlement to judgment on the pleadings and Plaintiff's motions do not alter the deficiencies in the Complaint that warrant granting the Brathwaite Motion and that preclude entry of judgment in his favor.

27

## Conclusion

Defendant Brathwaite has demonstrated entitlement to judgment as a matter of law on all claims against her. Further, the Complaint fails to state a deliberate indifference claim against Defendant Lance in his official capacity, but adequately states a deliberate indifference claim against Defendant Lance in his individual capacity regarding Plaintiff's spinal injuries.

**IT IS THEREFORE RECOMMENDED** that the Brathwaite Motion (Docket Entries 24, 37) be granted and that the Lance Motion (Docket Entries 20, 34) be granted as to the Complaint's official-capacity claim and denied as to the Complaint's individual-capacity claim.

**IT IS FURTHER RECOMMENDED** that Plaintiff's summary judgment motions (Docket Entries 41, 45) be denied.

**IT IS FURTHER RECOMMENDED** that the Court terminate Plaintiff's Motions to Continue (Docket Entries 43, 47) as motions and treat them as responses in opposition to the Lance Motion (Docket Entries 20, 34).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 15, 2020

Case 1:19-cv-00528-LCB-LPA   Document 54   Filed 07/15/20   Page 28 of 28